## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MUTUAL MINDS, LLC, a California
limited liability company,

               Plaintiff,

       vs.

TRON SHELLY, an individual; RICK
MILLER, an individual; iDRIVE
INTERACTIVE, LLC, a Pennsylvania
limited liability company; PARENTS FOR
CHEAPER LIVING, LLC, a Virginia
limited liability company; and DOES 1
through 10, inclusive,

               Defendants.

CASE NO.

**JURY TRIAL DEMANDED**

## COMPLAINT

NOW COMES Plaintiff, Mutual Minds, LLC, by and through its undersigned attorneys, and files this Complaint, stating as follows:

1.     Defendants Tron Shelly, Rick Miller, Parents for Cheaper Living, and iDrive Interactive steal, convert, copy, and misuse proprietary information that their customers entrust to them so that they can divert profits away from the customers they agreed to service to themselves instead. In this case, Shelly, Miller, Parents for Cheaper Living, and iDrive devised and implemented a scheme whereby they abused their business relationship with plaintiff Mutual Minds to unlawfully create competing websites and steal business away from Mutual Minds.

Specifically:

a.   iDrive, led by Shelly and Miller, provided ads to Mutual Minds for posting on websites owned by Mutual Minds;

b.   iDrive agreed to pay Mutual Minds for actions taken by consumers, such as purchases, resulting from the iDrive ads placed on Mutual Minds' websites (the actions are also known as "conversions" and the rate at which ads result in conversions is known as the "conversion rate");

c.   During this process, iDrive learned which ads had the highest conversion rates, *i.e.* which ads generated the most revenue;

d.   iDrive improperly, and initially covertly and with the intent to avoid detection, accessed one or more Mutual Minds websites to determine which Mutual Minds websites resulted in the highest conversion rates, and which features of those websites resulted in the highest conversion rates;

e.   iDrive, at the direction of Shelly or Miller or both, then copied the best performing Mutual Minds websites and created competing websites by using the conversion rates that it would not have known but for Mutual Minds entrusting those rates to iDrive; and

      f.     As a result, defendants diverted business away from Mutual Minds to iDrive instead and caused substantial actual affiliate network confusion.

2.     Defendants cannot and do not deny these facts.  Foremost, in or around the summer of 2014, Miller and perhaps other iDrive principals, suggested that iDrive create competing Mutual Minds websites using information that Mutual Minds entrusted to them for the sole purpose of growing the business of Mutual Minds.  Indeed, in or around June 2014, Shelly openly admitted that he or someone else at iDrive copied one or more Mutual Minds websites but that there was nothing Mutual Minds could do about it.  Shelly is wrong, and his, Miller's, Parents for Cheaper Living's, and iDrive's brazen decision to steal, convert, and misuse Mutual Minds' proprietary information results in the claims for relief against defendants asserted below.

## PARTIES

3.     Plaintiff Mutual Minds is a limited liability company organized and existing under the laws of California with its principal place of business located at 1014 S. Westlake Blvd., Ste. 14227, Westlake Village, California 91361.

4.     Defendant Tron Shelly is an iDrive officer or member.  Mutual Minds is informed and believes, and based thereon alleges, that Shelly is a Pennsylvania resident.

5.     Defendant Rick Miller is an iDrive officer or member. Mutual Minds is informed and believes, and based thereon alleges, that Miller is a Pennsylvania resident.

6.     Defendant iDrive Interactive, LLC is a limited liability company organized and existing under the laws of Pennsylvania with its principal place of business located at 3909 Hartzdale Drive, Suite 907, Camp Hill, Pennsylvania 17011.

7.     Defendant Parents for Cheaper Living, LLC ("PCL") is a limited liability company organized and existing under the laws of Pennsylvania with its principal place of business located at 4006 Victory Blvd. Suite J #123, Portsmouth, Virginia 23701.

8.     Mutual Minds is ignorant of the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sue these defendants by such fictitious names. Mutual Minds will amend this complaint to allege their true names and capacities when ascertained. Mutual Minds is informed and believes, and based thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Mutual Minds' damages as herein alleged were actually and proximately caused by their conduct. Mutual Minds is informed and believes, and based thereon alleges, that, similar to defendants Tron, Miller, iDrive, and PCL, the

4

fictitiously named defendants maintain some ownership right, title, or interest in iDrive and acted in their individual capacity to cause harm to Mutual Minds. Mutual Minds is informed and believes, and based thereon alleges, that at all times material hereto, each defendant has authorized, approved, ratified and/or endorsed the acts of each remaining co-defendant.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to Article III, § 2, of the United States Constitution and 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.    The Court has personal jurisdiction over Shelly because Shelly is a resident of Pennsylvania.

11.    This Court has personal jurisdiction over Miller because Miller is a resident of Pennsylvania.

12.    This Court has personal jurisdiction over iDrive because iDrive is a Pennsylvania limited liability company with its principal place of business in Pennsylvania.    Based on information and belief, iDrive's sole members are Pennsylvania residents.

13.    This Court has personal jurisdiction over PCL because PCL is a Pennsylvania limited liability company doing business in Pennsylvania.   Based on

information and belief, iDrive's sole members are Pennsylvania residents.

14.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because defendants are residents of Pennsylvania, and defendants are residents of this district or their members are residents of this district.  Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Mutual Minds' claims occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

**A.    Mutual Minds Entrusts Trade Secrets to Defendants for Defendants to Perform Services**

15.    Mutual Minds creates and develops online communities for people that have common interests and provides those individuals with content targeted to their demographic, including resources, benefits, and discounts.  For example, Mutual Minds created the website spaoa.org, or "Single Parents Alliance of America," which is a site that provides information and resources for single parents.  Membership in these online communities is free for consumers, and all of the traffic driven to these websites is generated solely by Mutual Minds.

16.    Mutual Minds partners with advertising networks to place ads on Mutual Minds websites.  When a user responds to such an ad and engages in an action or conversion (such as a purchase), Mutual Minds receives a small portion of the large revenue it generates for its affiliate network partners and their

advertiser clients.

17.    With respect to online communities targeting the parent sector, Mutual Minds is widely regarded as an industry founder and current industry leader.

18.    From approximately 2011 to 2014, Mutual Minds partnered with iDrive, an advertising network, to post ads on several online communities Mutual Minds created for demographics such as single parents (http://spaoa.org) and expecting parents (americanhoperesources.com), among others communities (collectively referred to herein as the "Websites").   Under this arrangement, ads provided by iDrive would be posted on Mutual Minds websites for users to view and click.   When a user clicks on an ad and completes a purchase or other conversion, iDrive would remit to Mutual Minds a portion of the revenue generated.

19.    In connection with their relationship with Mutual Minds, defendants were entrusted with, were granted access to, and gained knowledge of, Mutual Minds' trade secret, confidential, and proprietary information (collectively, the "Trade Secrets").   The Trade Secrets include, but are not limited to, a detailed description of Mutual Minds' target demographics, information regarding Mutual Minds members, such as members' unique IP addresses and detailed information regarding member preferences and the types of advertisements most likely to lead

7

to sales as reflected in conversion rates, earnings-per-click data, complete questionnaire information for each member that converted into a sale, and back-end enrollment statistics. Thus, Mutual Minds entrusted iDrive with specific and proprietary information about the exact audiences that Mutual Minds targeted and what types of advertisements made such audiences react and drive conversions. These Trade Secrets also revealed to defendants the conversion rates associated with the ads, that is, which ads generated the most revenue as a result of their placement on the Websites and the content on the Websites.

20.     Based on the organic traffic Mutual Minds developed and generated on its various online communities, the iDrive advertisements posted on Mutual Minds' Websites grossed hundreds of thousands of dollars for iDrive.

21.     Although the Websites themselves are public, the Trade Secrets, including the conversion rates, are not. The Trade Secrets are only known to defendants by reason of iDrive's relationship with Mutual Minds. Thus, the Trade Secrets were only disclosed to defendants to be used in connection with iDrive's delivery of ads to Mutual Minds, and defendants were not authorized to use or disclose the Trade Secrets for any other purpose. Mutual Minds only provided the Trade Secrets, including the conversion rates, with the expectation that such information would be confidential, and never believed that iDrive would use the conversion rates to create competing websites.

8

22.    The Trade Secrets were developed through Mutual Minds'
expenditure of significant time, effort, money, and resources, and have substantial
economic value in that the use of the information has enabled Mutual Minds to
build a successful business and identify and fill the needs of their members better
than their competitors.  Indeed, disclosure of conversion rates and the other Trade
Secrets, combined with the unique characteristics of the Websites, would allow
competing marketers to copy the Websites and then dilute the revenues generated
from them.    Thus, the Trade Secrets are not publicly available and were a
competitor to gain unauthorized access to them, they would provide a significant
and unfair competitive advantage to the competitor to the detriment of Mutual
Minds.  Accordingly, at all relevant times, Mutual Minds took measures to protect
the Trade Secrets, including storing the information on secure, password protected
servers, implementing policies preventing unauthorized disclosure to third parties,
and restricting access to the Trade Secrets to only those with a need to know.

**B.    Defendants Steal, Convert, and Misuse Mutual Minds Trade
       Secrets**

23.    In or around the summer of 2014, iDrive held an internal meeting at
which Rick Miller, co-founder and President of iDrive, suggested that iDrive copy
the Websites.  Copying the websites could only occur by using the Trade Secrets.

24.    At the time of the meeting referenced in the preceding paragraph,
iDrive acted as an advertising network partner for Mutual Minds.  But instead of

acting as a loyal partner, defendants engaged in a systematic, illicit, and underhanded campaign to copy Mutual Minds' successful model and poach Mutual Minds' process, look, and design.   Specifically, defendants used Mutual Minds' Trade Secrets and improperly accessed one or more of the Websites by creating fake user accounts to establish competing Websites.   This included targeting the very demographics Mutual Minds targets, communicating with members the same way as Mutual Minds, and copying in a wholesale fashion the source code of the Websites and the timing, type, and placement of content.   As one example only, defendants created a website for single parents (http://www.parentsforcheaperliving.com) to rip off the Mutual Minds website for single parents (http://www.spaoa.org) and included similar ads (ads for cars for example) because defendants knew, resulting only from their relationship with Mutual Minds, that the combination of the Websites' unique characteristics and types of ads placed on those sites would yield high conversion rates that Mutual Minds would otherwise realize.

25.   Around the time defendants established their competing websites (and before Mutual Minds discovered defendants' illicit conduct), defendants attempted to force Mutual Minds to agree to revised and unconscionable terms and conditions.   iDrive required that Mutual Minds consent to these terms by refusing access to iDrive's online portal, which Mutual Minds needed to access to see how

much iDrive owed Mutual Minds for conversions, unless Mutual Minds agreed to the terms.  Under duress, Mutual Minds consented to the terms.

26.   In these unconscionable and unenforceable terms, defendants intended, among other things, to force Mutual Minds to convert and convey trade secrets and confidential information relating to Mutual Minds' members and other things to defendants' own possession.   These terms and conditions are unenforceable because defendants purported to commit Mutual Minds to them by fraudulently omitting that Mutual Minds would use the terms in an attempt to obtain ownership and control over Mutual Minds conversion rates and other things, and then build one or more competing websites.

27.   Mutual Minds discovered defendants' free-riding conduct as alleged herein when a colleague of a Mutual Minds employee notified Mutual Minds of the suspicious similarity between the Mutual Minds website http://spaoa.org and the iDrive website http://parentsforcheaperliving.com.   When confronted with this evidence, Tron Shelly, a co-founder and Executive Vice President of iDrive, admitted that iDrive had always wanted to own their own site, that iDrive had copied Mutual Minds' website, and brazenly, that there was nothing that Mutual Minds could do about it.  Tron Shelly did so during a call with James Maynard of Mutual Minds on or after June 20, 2014, when Mutual Minds received an unsolicited notification stating in relevant part: "iDrive cop[y]ing your

11

SPAOA.org?  parentsforheaperliving."

28.     More recently, Mutual Minds updated all of its email templates used to market to their existing members and discovered that, within 2 days, iDrive had copied their templates.  iDrive also began to use the same email service provider as Mutual Minds to deliver email.

29.     Defendants' wholesale copying of Mutual Minds business, methods, and Websites, which iDrive was only able to accomplish due to its illicit use of Mutual Minds' Trade Secrets, caused substantial amounts of affiliate network confusion in the industry.   Indeed, networks contacted Mutual Minds about defendants' websites and traffic thinking that they belonged to Mutual Minds. Defendants may very well have received similar communications regarding Mutual Minds' Websites.

30.     This network confusion poses a substantial and continuing risk to Mutual Minds' business because the quality of the traffic driven to the Websites is first-rate in the industry.  If networks or advertisers believe that Mutual Minds is responsible for the lower quality traffic driven to defendants' websites, advertisers may be deterred from or cease working with Mutual Minds.   This network confusion also allows defendants to take advantage of the goodwill Mutual Minds established for itself in the industry through the expenditure of significant time, resources, and effort.

31.   Defendants' wholesale copying of Mutual Minds' email campaigns has cause similar confusion and harm to Mutual Minds.

32.   Mutual Minds would not have entered into a business relationship with iDrive, continued with any relationship, allowed access to the Websites or its Trade Secrets, or purportedly agreed to any terms or conditions, if it had known that defendants were going to use the information obtained from the relationship to compete with Mutual Minds.

33.   Rather than correcting their misconduct or compensating Mutual Minds for the business defendants stole from Mutual Minds, defendants claim that they commissioned an investigation – the results of which they refused to reveal – that supposedly showed that Mutual Minds copied content on one or more of the Websites.  This investigation, even if the results exist, was commissioned solely to deflect liability, and to intimidate Mutual Minds from filing suit.  Mutual Minds is not intimidated by iDrive's unconscionable misconduct or any alleged investigation, and pursues the following causes of action.

34.   All conditions precedent to the maintenance of this action have been fulfilled.

## COUNT I
## CONVERSION
(As to All Defendants)

35.   Mutual Minds re-pleads, re-alleges, and incorporates into this count

each and every allegation set forth in this Complaint.

36.   At all relevant times, Mutual Minds owned and had the right to possess the Trade Secrets.

37.   Beginning on or around the summer of 2014, defendants intentionally exercised dominion and control over Mutual Minds' data, including the conversion rates associated with the Websites and other Trade Secrets, without Mutual Minds' consent or lawful justification.  Defendants intentionally exercised such dominion and control in order to develop websites that competed with the Websites.

38.   Mutual Minds has suffered economic damages due to defendants' illicit conduct, which was at least a substantial, if not the sole, factor in causing Mutual Minds' harm.  Mutual Minds suffered damages in an amount exceeding $75,000.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS
(Pennsylvania Uniform Trade Secrets Act, 12 P.S. § 5301, *et seq.*)
(As to All Defendants)

39.   Mutual Minds re-pleads, re-alleges, and incorporates into this count each and every allegation set forth in this Complaint.

40.   Mutual Minds' Trade Secrets constitutes trade secret information as the term is defined in the Pennsylvania Uniform Trade Secrets Act.  This is because the Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable by, proper means by other

persons who can obtain economic value from its disclosure or use, and the Trade Secrets are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

41.     The Trade Secrets were developed through Mutual Minds' expenditure of significant time, effort, money, and resources, and have substantial economic value in that the use of the information has enabled Mutual Minds to build a successful business and identify and fill the needs of their members better than their competitors.  Indeed, disclosure of conversion rates and the other Trade Secrets, combined with the unique characteristics of the Websites, would allow competing marketers to copy the Websites and then dilute the revenues generated from them.

42.     The Trade Secrets are not publicly available and were a competitor to gain unauthorized access to them, they would provide a significant and unfair competitive advantage to the competitor to the detriment of Mutual Minds. Accordingly, at all relevant times, Mutual Minds took measures to protect the Trade Secrets, including storing the information on secure, password protected servers, implementing policies preventing unauthorized disclosure to third parties, and restricting access to the Trade Secrets to only those with a need to know.

43.     On or around the Summer of 2014, defendants intentionally misappropriated Mutual Minds' trade secrets by using Mutual Minds' trade secrets

without the express or implied consent of Mutual Minds to establish websites that compete with the Websites.

44.    At the time of defendants' illicit use of Mutual Minds' trade secrets, each defendant knew or had reason to know that their knowledge of the trade secrets was either acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to Mutual Minds to maintain its secrecy or limit its use.

45.    As a result of defendants' illicit conduct, Mutual Minds has suffered and will continue to suffer monetary damages in an amount to be proven at trial.

46.    Defendants' conduct in misappropriating and using Mutual Minds' trade secrets was willful and malicious, and therefore, Mutual Minds is entitled to double damages as well as its attorney's fees and costs pursuant to 12 P.S. §§ 5304-5305.

47.    Mutual Minds is also entitled to injunctive relief enjoining defendants from possessing or using Mutual Minds' trade secrets for any purpose.

## COUNT III
## FRAUDULENT NONDISCLOSURE
(As to All Defendants)

48.    Mutual Minds re-pleads, re-alleges, and incorporates into this count each and every allegation set forth in this Complaint.

49.    Prior to when Mutual Minds and iDrive agreed to enter into their

business relationship, defendants failed to disclose to Mutual Minds that iDrive intended on entering into a business relationship with Mutual Minds in order to gain access to Mutual Minds' trade secrets and start competing websites.

50.    Similarly, during Mutual Minds and iDrive's business relationship, including in or around the summer of 2014, defendants failed to disclose to Mutual Minds that iDrive intended on stealing Mutual Minds data, including the conversion rates associated with the Websites and other Trade Secrets, in order to start websites that competed with the Websites.

51.    Defendants knew that had they disclosed that they intended to use and did use Mutual Minds conversion rates and other facts to Mutual Minds, Mutual Minds would not have entered into any business relationship with iDrive and would not have continued its business relationship with iDrive.

52.    At all relevant times, defendants owed Mutual Minds a duty to exercise reasonable care to disclose their intent to misappropriate Mutual Minds' trade secrets for use beyond the scope of the relationship between iDrive and Mutual Minds.

53.    Due to its reasonable and justified belief that defendants would not steal its trade secrets or start competing websites, Mutual Minds entered into, and continued, the business relationship with iDrive alleged above, and as a result, Mutual Minds was damaged in an amount to be proven at trial.

54.    Mutual Minds is also entitled to punitive damages in light of defendants' outrageous conduct.

55.    Mutual Minds suffered damages in an amount exceeding $75,000.

## COUNT IV
## UNJUST ENRICHMENT
### (As to All Defendants)

56.    Mutual Minds re-pleads, re-alleges, and incorporates into this count each and every allegation set forth in this Complaint.

57.    As a result of Mutual Minds' business relationship with iDrive, Mutual Minds conferred significant benefits on defendants, including access to valuable data, such as the conversion rates associated with the Websites and other Trade Secrets.

58.    Defendants accepted and retained these benefits, fully appreciating the value of such benefits.   In fact, defendants intended and did actually use such benefits to set up websites that compete with the Websites, resulting in significant revenue to defendants.

59.    Under the circumstances set forth herein, it would be inequitable for defendant to retain such benefits without payment of value to Mutual Minds because it would reward instead of punish defendants' unlawful conduct.

## COUNT V
## TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE
### (As to All Defendants)

60.     Mutual Minds re-pleads, re-alleges, and incorporates into this count each and every allegation set forth in this Complaint.

61.     At all relevant times, Mutual Minds had a reasonable expectation that its Websites would continue to generate revenue for Mutual Minds.

62.     Defendants had knowledge of Mutual Minds' reasonable expectation because they had access not only to Mutual Minds' data relating to traffic generated by the Websites but also conversion rates relating specifically to Mutual Minds' clients, among other information.

63.     Defendants wrongfully and intentionally interfered with Mutual Minds' reasonable expectation by inducing Mutual Minds to enter into and continue a business relationship with iDrive so that they could steal Mutual Minds' data, including the conversion rates associated with the Websites and other Trade Secrets to start competing websites.   Defendants further wrongfully and intentionally interfered with Mutual Minds' reasonable expectation by attempting to force Mutual Minds to agree to terms and conditions that purportedly resulted in the attempted transfer to defendants of Mutual Minds' ownership interest in trade secret and confidential information relating to its members and other things.

64.     Mutual Minds had a reasonable probability that it would have received the economic benefit it expected in the absence of such unfair competition by iDrive.

65.    Defendants' interference resulted in damages to Mutual Minds in an amount to be proven at trial.    Mutual Minds suffered damages in an amount exceeding $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Mutual Minds demands that judgment be entered in its favor and against defendants as follows:

1.    That Mutual Minds be awarded damages in an amount exceeding $75,000 to be proven at trial;

2.    That Mutual Minds be awarded punitive damages for defendants' willful and malicious conduct;

3.    That Mutual Minds be awarded its attorneys' fees pursuant to statute, including 12 P.S. § 5305;

4.    That Mutual Minds be awarded injunctive relief prohibiting defendants from possessing or using Mutual Minds' Trade Secrets for any purpose;

5.    That Mutual Minds be awarded pre-judgment and post-judgment interest at the statutory rate;

6.    That Mutual Minds be awarded its costs of suit; and

7.    That Mutual Minds be awarded such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Mutual Minds demands

trial by jury of all issues triable of right by a jury.

Respectfully submitted,

RHOADS & SINON LLP

By:    /s/ Timothy J. Nieman
Timothy J. Nieman
One South Market Square
P. O. Box 1146
Harrisburg, PA 17108-1146
(717) 233-5731

Ari N. Rothman
Shahin Rothermel
VENABLE LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4000

Attorneys for Plaintiff
MUTUAL MINDS, LLC